## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Senior Judge Raymond P. Moore

Civil Action No. 24-cv-00912-RM-STV

THE RECEIVERSHIP ESTATE OF BLUE ISLE MARKETS INC. AND BLUE ISLE MARKETS LTD., derivatively through its creditors,

      Plaintiff,

v.

EQUITI CAPITAL UK LIMITED, and
EQUITI ARMENIA CJSC,

      Defendants.

---

## ORDER

---

This Order resolves four Motions that are pending in this derivative action:

(1)     the First Motion to Dismiss by Defendants Equiti Capital UK Limited ("Equiti UK") and Equiti Armenia CJSC ("Equiti AM") (collectively "Equiti") (ECF No. 28);

(2)     the Motion to Strike by Equiti (ECF No. 29);

(3)     the Second Motion to Dismiss by Equiti (ECF No. 38); and

(4)     the Motion to File Surreply by Plaintiff ("Blue Isle Estate") (ECF No. 61).

The Motions have been fully briefed (ECF Nos. 33, 35, 41, 42, 47, 56, 62, 63) and are denied for the reasons below.

## I.    BACKGROUND

In 2019, the United States Securities and Exchange Commission ("SEC") brought a civil enforcement action against three individuals and three entities (including Blue Isle Markets Inc. and Blue Isle Markets Ltd. (collectively "Blue Isle")) for perpetrating a fraudulent investment

scheme that raised over $125 million ("SEC Action").  The SEC Defendants consented to an

Order freezing various assets until final adjudication of the case on the merits.

Appearing specially, Equiti participated in the SEC Action as a non-party.  There, the

Court ordered Equiti to liquidate the open trading positions in Blue Isle's accounts, and Equiti

complied with that Order.  Equiti then asserted that it had a contractual right to offset the

negative balance in Equiti AM's account (about $3.5 million) with the funds from Equiti UK's

account (about $13 million).  To resolve this dispute, the SEC and Equiti reached an

agreement—which the SEC Defendants opposed—whereby about $11.2 million was transferred

to the Receiver and about $1.8 million was released from the asset freeze to Equiti.

In the SEC Action, the Court appointed a Receiver to marshal and preserve all

Receivership Property, including Blue Isle's assets.  (ECF No. 28-13.)  The Receivership Order

includes the following tolling provision:

> All Ancillary Proceedings are stayed in their entirety, and all Courts having any
> jurisdiction thereof are enjoined from taking or permitting any action until further
> Order of this Court.  Further, as to a cause of action accrued or accruing in favor of
> one or more of the Receivership Defendants or Receivership Relief Defendants
> against a third person or party, any applicable statute of limitation is tolled during
> the period in which this injunction against commencement of legal proceedings is
> in effect as to that cause of action.

(*Id.* at ¶ 26.)  After the Receiver decided not to pursue any claims against Equiti (ECF No. 38-6

at 8), the Court lifted the stay of litigation in the SEC Action to allow a group of forty-seven

individuals and entities that invested in the fraudulent trading scheme ("Blue Isle Plaintiffs") to

pursue this derivative action on behalf of the Receivership Estate against Equiti ("Blue Isle

Action").

In this case, the Blue Isle Estate, derivatively through the Blue Isle Plaintiffs, alleges that

Blue Isle transferred $74 million to Equiti between 2016 and 2019 and that Equiti knowingly

participated in a fraudulent scheme that generated more than $12 million in fees and

commissions. The Blue Isle Estate asserts claims against Equiti for fraudulent transfer under the

Colorado Uniform Fraudulent Transfer Act ("CUFTA") and unjust enrichment.[1]

      In August 2024, another group of individuals and entities that invested in Blue Isle

("English Claimants") filed a direct action in England against Equiti UK, asserting claims for

dishonest assistance and knowing receipt. The English Claimants and the Blue Isle Plaintiffs

mostly overlap, but not entirely. In the English Action, the English Claimants assert that Equiti

UK is liable to them *personally* for their individual losses stemming from the Blue Isle's trading

scheme.

      In November 2024, Equiti UK filed a counterclaim in the English Action, seeking to hold

the English Claimants who are also Blue Isle Plaintiffs *personally* liable for inducing the Blue

Isle Estate to breach the forum selection clause in Blue Isle's agreement with Equiti UK by

commencing and pursuing this case. In its counterclaim, Equiti UK seeks to recover the costs

and fees it incurs in this action, including nearly $1.5 million as of October 2024.

      In February 2025, the Court granted the unopposed Motion by the Blue Isle Plaintiffs to

authorize the Select Creditor Committee ("SCC")—comprised of four Blue Isle Plaintiffs and

five other creditors of Blue Isle—to direct and control the Blue Isle Action on behalf of the Blue

Isle Estate.

## II.    FIRST MOTION TO DISMISS

      Appearing specially, Equiti moves to dismiss the claims in this case for lack of personal

---

[1] Although the Blue Isle Estate is authorized to act on behalf of the Receivership Estate and is a component of it, the Court uses separate labels to help distinguish between events in the SEC Action and events in this case.

jurisdiction, on statute of limitations grounds, and for insufficient service of process on Equiti AM.  These arguments lack merit.

### A.    Personal Jurisdiction

Equiti contends the Blue Isle Estate cannot meet its burden of establishing personal jurisdiction by showing Equiti has the requisite "minimum contacts" with Colorado. *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  The Blue Isle Estate, while not conceding the minimum contacts issue, contends that Equiti consented to this Court's jurisdiction based on its participation in the SEC Action.  The Court agrees with the Blue Isle Estate on this point and therefore forgoes the minimum contacts analysis.

Because the due process requirement of personal jurisdiction is an individual, waivable right, "an individual may submit to the jurisdiction of the court by appearance."  *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).  A defendant's actions "may amount to a legal submission to the jurisdiction of the court, whether voluntary or not."  *Id.* at 704-05.  There are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court."  *Id.* at 703.

Equiti's participation in the SEC Action, which is still ongoing, has been considerable:

- it opposed a motion by the SEC Defendants for an order directing it to liquidate and convert to U.S. dollars the assets in Blue Isle's accounts and to preserve and hold the balances;

- it filed a motion seeking an expedited ruling on the liquidation issue;

- it consented to entry of an order amending the asset freeze to allow it to retain $1.8 million from Blue Isle's accounts in exchange for transferring $11.2 million to the Receiver;

- it sought and obtained multiple extensions as well as permission to exceed the Court's page limit in connection with its various filings; and

- it responded to various motions by the SEC and the SEC Defendants.

"[A] party cannot simultaneously seek affirmative relief from a court and object to that court's exercise of jurisdiction." *SEC v. Ross*, 504 F.3d 1130, 1148 (9th Cir. 2007). Even before it was ordered to liquidate the Blue Isle accounts, Equiti availed itself of this forum by attempting to influence the proceedings in the SEC Action. By asserting that it was entitled to offset the deficit in Equiti AM's account with the proceeds from Equiti UK's account, Equiti's conduct was analogous to that of a creditor filing a claim in a bankruptcy proceeding. "It has long been the law that a creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences." *In re Hensley*, 356 B.R. 68, 74 (Bankr. D. Kan. 2006) (quotation omitted); *see also Ross*, 504 F.3d at 1149; *In re PNP Holdings Corp.*, 184 B.R. 805, 807 (B.A.P. 9th Cir. 1995). Indeed, allowing the "offset" proposed by Equiti would have put its interests ahead of other creditors' interests. In any event, by its litigation conduct, Equiti invited the Court to resolve a dispute between it and the Receiver. *See Ross*, 504 F.3d at 1149 ("[A] party as consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties."). Based on its active participation in the SEC Action, the Court finds that Equiti submitted to the jurisdiction of this Court. *See Carney v. Beracha*, 996 F. Supp. 2d 56, 64 (D. Conn. 2014) ("As a practical matter, [defendants'] numerous filings, appearances, and arguments before the court are sufficient to give this court jurisdiction over them.").

Equiti contends that these actions were "solely defensive" (ECF No. 28 at 14) and notes that in each of its filings in the SEC Action and this case, it included a disclaimer such as the following: "In making this special appearance, Defendants do not consent to the personal

jurisdiction of the Court, and, for the reasons explained below, this Court lacks personal jurisdiction over Defendants." (ECF No. 28 at 1 n.1.) But Equiti's actions speak louder than its disclaimers. Its involvement in the SEC Action has gone well beyond asserting a personal jurisdiction defense. "[W]hen a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 460-61 (5th Cir. 2001) (quotation omitted). Despite contending that liquidating Blue Isle's accounts would violate Armenian law, Equiti complied with the liquidation order and eventually consented to affirmative relief in the form of retaining $1.8 million from those accounts. Although this is half the amount it claimed it was entitled to, the Court does not consider Equiti's litigation conduct, spanning more than three years, to be "solely defensive." Under the circumstances, Equiti's assertion that its due process rights will be violated if it has to defend itself in this case rings hollow, and the Court finds it is estopped from raising personal jurisdiction as a defense in this derivative proceeding. *See Insurance Corp. of Ireland*, 456 U.S. at 704.

**B.    Statute of Limitations**

Equiti also contends the Complaint in this case is untimely, since there is no dispute the underlying transfers on which it relies occurred more than four years before it was filed. *See* Colo. Rev. Stat. § 38-8110(1)(a). However, the Court agrees with the Blue Isle Estate's position that it can take advantage of the tolling provision in the Receivership Order. The Blue Isle Estate's fraudulent transfer and unjust enrichment claims are recoverable assets of the Receivership Estate, and the Court's Authorization Order in the SEC Action authorized the Blue Isle Plaintiffs to pursue their claims against Equiti "in the name of and on behalf of the

6

Receivership Estate . . . and in the same capacity as the Receiver would be authorized to bring the claims." (ECF No. 35-2 at 2-3.) The tolling provision in the Receivership Order, quoted above, tolled any applicable statute of limitations while the injunction was in place.

Equiti's contention that the limitations period set forth in Colo. Rev. Stat. § 38-3-110(1)(a) is a statute of repose rather than a statute of limitations does not alter the analysis. Equiti relies on *Lewis v. Taylor*, 375 P.3d 1205, 1209 (Colo. 2016), where the Colorado Supreme Court concluded that the first portion of the statute, which requires actions to be brought "within four years after the transfer was made," uses the language of a statute of repose. However, the *Lewis* court went on to conclude that the second portion of the statute, which, in the alternative, requires actions to be brought "no later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant," uses the language of a statute of limitations. *Id.* As such, it may be tolled. Equiti cites no authority to the contrary.

Equiti's statute of limitations argument fails for the additional reason that it has not shown, based on the allegations in the Complaint, that the Blue Isle Estate necessarily should have discovered the fraudulent nature of the transfers from Blue Isle to Equiti more than a year before this case was initiated. "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only of it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1168 (D. Colo. 2010) (quotation omitted). While the circumstances indicate the Blue Isle Plaintiffs have long been aware of the underlying transfers to Equiti, the allegations in the Complaint do not show that they necessarily discovered the fraudulent nature of those transfers until more recently. Equiti's contention that the Blue Isle Plaintiffs cannot rely on the discovery rule relies on information outside the Complaint, which the Court does not consider with the case in its current

posture. Accordingly, Equiti's failure to establish that the allegations in the Complaint necessarily show the applicable statutes of limitations have run provides another basis for declining to dismiss the Blue Isle Estate's claims.

### C.    Service

Equiti also argues that the Blue Isle Estate failed to comply with the mandatory Hague Convention process, and therefore Equiti AM was not properly served. (ECF No. 28 at 27-30.) But the Blue Isle Estate has since filed a supplemental notice with proof of service indicating "Equiti AM was properly served under the Hague Convention by Armenia's Central Authority on November 28, 2024." (ECF No. 75.) Equiti has not contested the statements in the supplemental notice, and the Court finds the service issue is now moot.

Therefore, the Court denies the First Motion to Dismiss in its entirety.

## III.    MOTION TO STRIKE

Equiti also moves to strike the Complaint pursuant to Fed. R. Civ. P. 12(f) and 37(b)(2) and the Court's inherent authority, arguing that it "contains facts and allegations derived from discovery in violation of at least two protective orders" and 28 U.S.C. § 1782. (ECF No. 29 at 2.) The Court declines to do so.

One fundamental problem with Equiti's request is that the Blue Isle Estate, the nominal Plaintiff in this case, was not a party to the underlying § 1782 proceedings targeted by the Motion. Equiti's Motion is premised on multiple applications under § 1782 that were filed in jurisdictions across the country by various individuals and entities that were victims of the Mediatrix/Blue Isle fraud to obtain discovery for the purpose of supporting an action against Equiti UK in the United Kingdom. But Equiti's attempt to conflate the applicants in those proceedings with the Blue Isle Estate is not well taken. On the current record, there is no factual

basis to conclude that the Blue Isle Estate itself violated § 1782 or any protective order.

Another fundamental problem with Equiti's request is that, assuming such a violation did occur, this is not an apt forum in which to seek recourse, particularly the heavy-handed sanction of striking of the entire Complaint, or at least nineteen paragraphs of it, without any advance warning. It appears that Equiti actively opposed the § 1782 proceedings. To the extent those efforts were unsuccessful, the Court will not provide an opportunity for a do-over. To the extent Equiti asserts a violation of any protective order entered in connection with those proceedings, it should seek relief from the court which issued the order.

In light of the fundamental flaws with this Motion, the Court concludes that oral argument would not be useful. This Motion is denied.

## IV.    SECOND MOTION TO DISMISS

Equiti has also filed a Second Motion to Dismiss, arguing that this case should be dismissed for forum non conveniens. The Court disagrees.

"The central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (quotation omitted). The doctrine permits a court to dismiss a case "when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009) (quotation omitted). Two threshold questions apply: first, whether there is an adequate alternative forum in which the defendant is amenable to process, and second, whether foreign law applies. *Id.* If the answer to both questions is yes, courts consider various private and public interest factors. *Id.*; *Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d

799, 804 (10th Cir. 2016). "[N]ormally there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum," which is overcome "only when the private and public interest factors clearly point towards trial in the alternative forum." *Gshwind*, 161 F.3d at 606 (quotation omitted).

Equiti argues the first threshold consideration is satisfied because it is amenable to process in England and because the claims in this case exist in England. (ECF No. 38 at 8-9.) For present purposes, the Court accepts Equiti's position that England is an adequate alternative forum

Equiti argues the second threshold consideration is satisfied because English and Armenian law govern this dispute under Colorado's choice-of-law rules as well as the choice-of-law provisions in the agreements between Equiti and Blue Isle. (*Id.* at 10.) But the Court is not persuaded.

Pursuant to Colorado choice-of-law rules, "the most significant relationship to the occurrence and parties" test is used to decide which forum's law applies. *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509-10 (Colo. 2007). Under this test, courts consider (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at 510 (quotation omitted).

Here, the party injured by the transfers at issue is the Blue Isle Estate, which is clearly based in Colorado. *See Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1311 (10th Cir. 2022). In addition, because the Mediatrix/Blue Isle fraud was perpetrated in Colorado, the Court finds that is where the conduct causing the injury occurred. Equiti's focus on the location

10

of the transferees and Blue Isle's place of incorporation is misplaced in this context.  This is not

a case where the physical location of the conveyed property is paramount.  Regarding where the

parties are located, the Court again considers it highly relevant that the Blue Isle Estate was

created and is based in Colorado.  But given that Equiti's employees and representatives are

mostly in England and Armenia, this factor does not favor either party.  The same goes for the

final factor—the circumstances do not suggest the parties' relationship was any more centered in

England or Armenia than it was in Colorado.  Thus, the Court finds that overall, the most

significant relationship test favors Colorado and does not support the application of foreign law

to the Blue Isle Estate's claims.

Equiti also has not shown that the choice-of-law provisions in the agreements between it

and Blue Isle are controlling.  Pursuant to a concurrent ruling being issued in the SEC Action

today, the Court has determined that the Receiver has rejected the General Terms Agreements

between Blue Isle and Equiti.  Moreover, contractual choice-of-law provisions do not trump

Colorado law when it comes to tort claims.  *See Sweeney v. Home Depot U.S.A., Inc.*, No. 23-cv-

01208-STV, 2024 WL 625601, at *3 (D. Colo. Feb. 14, 2024) (unpublished); *see also Zayed v.

Peregrine Fin. Grp., Inc.*, 2012 WL 2373423, at *2 (D. Minn. June 22, 2012) (unpublished)

(concluding fraudulent transfer claims did not arise from the parties' agreements).  Therefore, the

contractual choice-of-law provisions do not mandate the application of foreign law to the Blue

Isle Estate's claims.

But even if foreign law applied, the Court would find that neither the private nor public

interest factors weigh in Equiti's favor, much less overcome the presumption in favor of Blue

Isle's chosen forum.  *See Gshwind*, 161 F.3d at 606; *see also Robb Evans & Assocs. LLC v. Diaz

Cueto*, 2022 WL 3213611, at *11 (D. Md. Aug. 9, 2022) (unpublished) (noting that in an

11

ancillary proceeding, "the Receiver's choice of venue for the litigation—logically, the same court where the Receivership has been established—should be afforded deference").

The private interest factors are:

(1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.

*Gschwind*, 161 F.3d at 606.

Here, a substantial amount of evidence related to the Mediatrix/Blue Isle fraud has already been marshaled in Colorado in connection with the SEC Action, the criminal proceedings against the individual SEC Defendants, and related ancillary actions. It remains to be seen whether an English or Armenian court would have similar access to sources of proof pertaining to Equiti's alleged involvement. Under the circumstances, the Court finds the first factor weighs against dismissal. Second, the individual SEC Defendants, who are likely to be key witnesses in this case, are in the United States, and Equiti makes no showing that they could be compelled to attend proceedings in England or Armenia. This factor also weighs against dismissal. Third, there is no indication that the cost of bringing witnesses to Colorado exceeds the cost of bringing them to England or Armenia. This factor is neutral. The fourth factor is also neutral, as this is not a case where a view of the premises appears to be appropriate. Fifth, several practical considerations favor trial in Colorado, where the criminal proceedings are nearly completed, the Receiver has been appointed, and the SEC Action is well underway, having begun six years ago. The Court's familiarity and extensive involvement with this case will likely make it easier, expeditious, and less expensive for the parties to continue litigating here. This factor weighs strongly against dismissal for forum non conveniens. On balance, the

private interest factors do not support dismissal.

The public interest factors are:

(1) administrative difficulties of courts with congested dockets which can be
caused be cases not being filed at their place of origin; (2) the burden of jury duty
on members of a community with no connection to the litigation; (3) the local
interest in having localized controversies decided at home; and (4) the
appropriateness of having diversity cases tried in a forum that is familiar with the
governing law.

*Id.*

This case is one of multiple interrelated actions connected with the SEC Action, which
originated in this Court. Indeed, this Court has been the epicenter of litigation involving the
Mediatrix/Blue Isle fraud—it has presided over the criminal proceedings involving the individual
defendants in the SEC Action and continues to preside over the SEC Action itself. Requiring the
claims in this case to be brought in England and/or Armenia would unnecessarily complicate
matters and increase costs for the Blue Isle Estate. *See Carney*, 996 F. Supp. 2d at 73. Thus, the
first factor weighs against dismissal. As for the second and third factors, Colorado's connection
to the litigation is well established. Aspects of the fraudulent trading scheme were perpetuated
here, and some investors are located here as well. Further, the Receivership Estate is a creation
of this Court, *see Wells Fargo Bank*, 31 F.4th at 1311, and, pursuant to the Receivership Order
entered in the SEC Action, has exclusive jurisdiction over Blue Isle's assets. Colorado clearly
has an interest in seeing that defrauded investors from the Mediatrix/Blue Isle fraud, including
some of its own residents, are compensated. And fourth, to the extent English law might apply,
there is no indication the Court would have trouble applying it. Therefore, the public interest
factors also do not support dismissal.

In short, Equiti has not shown that it would be vexatious or oppressive to continue

litigating here.  As noted above, Equiti participated in the SEC Action and obtained affirmative relief there in the form of retaining $1.8 million from Blue Isle's accounts.  Allowing this case to proceed in the Blue Isle Estate's chosen forum makes sense and serves the interest of judicial economy.  Accordingly, the Court finds Equiti has not met its burden of establishing the need for dismissing this case because of forum non conveniens.

## V.    MOTION TO FILE SURREPLY

In light of the Court's denial of Equiti's Second Motion to Dismiss, the Blue Isle Estate's Motion seeking permission to file a surreply in opposition to that Motion has become moot.

## VI.    CONCLUSION

Based on the foregoing, the Court DENIES the four Motions at issue (ECF Nos. 28, 29, 38, 61).

DATED this 29th day of September, 2025.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge